# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 12, 2010        Decided February 23, 2010

No. 09-5134

LAURA GONZALEZ-VERA AND ALI ABED BEYDOUN, AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF CARMELO
SORIA ESPINOZA, DECEASED,
APPELLANTS

v.

MICHAEL VERNON TOWNLEY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00995-HHK)

*Sarah Melikian*, Student Counsel, argued the cause for
appellants. On the briefs was *Ali A. Beydoun*, Supervisory
Attorney.

*Abby C. Wright*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With her on the brief was
*Mark B. Stern*, Attorney. *R. Craig Lawrence*, Assistant U.S.
Attorney, entered an appearance.

Before: HENDERSON and TATEL, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: How does one enforce a civil judgment against a person protected by the Witness Security Program? Congress, it turns out, answered this question in 18 U.S.C. § 3523. That provision requires the Attorney General to determine whether the protected person is making "reasonable efforts" to satisfy the judgment and establishes procedures for collecting the judgment if the person is failing to do so. In this case, the Attorney General found that a protected person would make reasonable efforts to pay a judgment owed to appellant. Dissatisfied, appellant sought to invoke one of section 3523's enforcement procedures— appointment of a guardian to help collect the judgment. Under these circumstances, the district court held, section 3523 does not authorize appointment of a guardian. For the reasons set forth in this opinion, we agree.

## I.

On September 21, 1976, former Chilean ambassador and foreign minister Orlando Letelier and his assistant Ronni Moffitt were assassinated as they drove to their office in Washington, D.C. Michael Vernon Townley, an American citizen and agent of Chilean President Augusto Pinochet's intelligence service, Dirección de Inteligencia Nacional, admitted his complicity in the killings, testified in the criminal proceedings, and pleaded guilty to one count of conspiracy to murder a foreign official. *United States v. Sampol*, 636 F.2d 621, 629 & n.3 (D.C. Cir. 1980). After serving five years in prison, Townley entered the Witness Security Program (WSP), commonly known as the Witness Protection Program. Through the WSP, the Attorney General may relocate and protect witnesses whose safety is at risk. 18

U.S.C. § 3521(a)(1). Such protection may include the creation of a new identity. *Id*. § 3521(b)(1)(A).

In the years following the two assassinations, Townley's involvement in various other crimes came to light. In particular, he was linked to the July 1976 torture and murder of Carmelo Soria Espinoza ("Soria"), a United Nations diplomat then living and working in Chile. In November 2002, Soria's widow, Laura Gonzalez-Vera, along with the personal representative of Soria's estate, sued Townley seeking damages for Soria's torture and killing. When Townley defaulted, the district court entered a $7 million judgment against him. *Gonzalez-Vera v. Kissinger*, No. 02-02240, Order for Default Judgment (D.D.C. Nov. 23, 2005).

Gonzalez-Vera then asked the Attorney General to help collect the judgment pursuant to 18 U.S.C. § 3523. Subsection (a) of that provision states that if a civil judgment is entered against a person enrolled in the WSP, "the Attorney General shall determine whether the [protected] person has made reasonable efforts to comply with the judgment" and "shall . . . urge the person to comply with the judgment." In language central to this case, subsection (a) states:

> If the Attorney General determines that the person has not made reasonable efforts to comply with the judgment, the Attorney General may, after considering the danger to the person and upon the request of the person holding the judgment disclose the identity and location of the person to the plaintiff entitled to recovery pursuant to the judgment.

In response to Gonzalez-Vera's request, the United States Marshals Service informed Townley that unless he took

satisfactory steps to comply with the judgment, his identity and location could be disclosed pursuant to subsection (a). Townley responded with an affidavit describing his present assets, debts, income, and financial history. Based on that affidavit, the WSP Director, to whom the Attorney General has delegated his authority on such issues, determined that "it is not unreasonable for [Townley] to pay $75 per week" toward the judgment. Letter from Stephen J. T'Kach, Director, U.S. Department of Justice Witness Security Program, to Jeffery M. Johnson, Dickstein Shapiro LLP (June 1, 2007). Townley agreed, but according to the Director, Gonzalez-Vera rejected the arrangement and so has received no payments. Although Gonzalez-Vera has a different view of what transpired, this disagreement is irrelevant to the statutory question we face here.

Gonzalez-Vera then sued Townley and the Attorney General in the United States District Court for the District of Columbia pursuant to section 3523(b)(1), which provides that any person who holds a judgment against a WSP participant "may, upon a decision by the Attorney General to deny disclosure of the current identity and location of such protected person, bring an action against the protected person in the United States district court." If the petitioner in fact holds a judgment and if the court finds "that the Attorney General has declined to disclose to the petitioner the current identity and location of the protected person," then subsection (b)(3) requires the court to "appoint a guardian to act on behalf of the petitioner." § 3523(b)(3). The Attorney General must then disclose to the guardian the protected person's identity and location. *Id.*

The Attorney General moved to dismiss, arguing that subsection (b)(1) makes a guardianship proceeding available only where the Attorney General determines that the

protected person is failing to make reasonable efforts to comply but, "after considering the danger to the [protected] person," § 3523(a), nonetheless declines to disclose the person's identity and location. Subsection (b)(1) does not, the Attorney General insisted, allow the judgment-holder to sue for the appointment of a guardian, where, as here, the Attorney General finds that the protected person *will* make reasonable efforts to pay.

Agreeing with the Attorney General, the district court emphasized that "the statute authorizes plaintiffs to bring this action only 'upon a *decision* by the Attorney General to deny disclosure'"—a decision, the district court held, the Attorney General had no authority to make "because § 3523(a) does not authorize . . . disclosure unless the [Attorney General] determines that Townley has not made reasonable efforts to comply with the judgment." *Gonzalez-Vera v. Townley*, 597 F. Supp. 2d 98, 102, 101 (D.D.C. 2009) (quoting § 3523(b)(1)). Having found that Townley would make reasonable efforts, the Attorney General "had no choice, no discretion, no decision." *Id.* at 102. Because Gonzalez-Vera "lack[ed] statutory authorization to bring this suit," the district court dismissed the case. *Id.*

Gonzalez-Vera appeals, arguing that the district court misinterpreted the statute. We review de novo the district court's grant of a motion to dismiss, *see, e.g.*, *Piersall v. Winter*, 435 F.3d 319, 321 (D.C. Cir. 2006), as well as its resolution of this "pure question of statutory interpretation," *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008); *see also Murphy Exploration and Prod. Co. v. Dep't of Interior*, 252 F.3d 473, 478–79 (D.C. Cir. 2001) (agency's construction of a statute receives no deference where statute grants judicial power to the courts rather than administrative power to the agency).

## II.

As noted above, section 3523(b)(1) permits a judgment-holder to sue for the appointment of a guardian "upon a decision by the Attorney General to deny disclosure." Because this case turns on the meaning of that phrase and its relationship to the process described in subsection (a), we think it helpful to begin by quoting the relevant provisions of the statute in full:

(a) If a judgment . . . is entered against [a protected] person the Attorney General shall determine whether the person has made reasonable efforts to comply with the judgment. . . . If the Attorney General determines that the person has not made reasonable efforts to comply with the judgment, the Attorney General may, after considering the danger to the person and upon the request of the person holding the judgment disclose the identity and location of the person to the plaintiff entitled to recovery pursuant to the judgment. . . .

(b) (1) Any person who holds a judgment entered by a Federal or State court in his or her favor against a person provided protection under this chapter may, upon a decision by the Attorney General to deny disclosure of the current identity and location of such protected person, bring an action against the protected person in the United States district court in the district where the person holding the judgment . . . resides. . . .

(3) Upon a determination (A) that the petitioner holds a judgment entered by a Federal or State court and (B) that the Attorney General has

declined to disclose to the petitioner the current identity and location of the protected person against whom the judgment was entered, the court shall appoint a guardian to act on behalf of the petitioner to enforce the judgment. . . . The Attorney General shall disclose to the guardian the current identity and location of the protected person and any other information necessary to enable the guardian to carry out his or her duties under this subsection. . . .

18 U.S.C. § 3523.

The parties agree that the Attorney General makes a "decision . . . to deny disclosure" within the meaning of subsection (b)(1) when he (1) finds that the protected person is failing to make reasonable efforts to comply with the judgment but (2) nonetheless declines to disclose because disclosure of the protected person's identity and location would endanger that person. According to Gonzalez-Vera, the Attorney General also makes a "decision . . . to deny disclosure" where, as here, he determines that the protected person *is* making reasonable efforts to satisfy the judgment, and thus does not disclose the protected person's identity and location. In support, Gonzalez-Vera relies on two features of section 3523. First, she points out that nothing in subsection (a) expressly bars the Attorney General from disclosing the protected person's information if he determines that reasonable efforts *are* being made. In other words, she argues, the Attorney General has authority to disclose—and thus can make a "decision . . . to deny disclosure"—even where he finds that the protected person is making reasonable efforts. Second, she emphasizes that subsection (b) nowhere references the reasonable-efforts determination required by subsection (a), thus demonstrating that these two subsections

provide "two independent mechanisms to assist with enforcement of an outstanding judgment." Appellant's Br. 8. Accordingly, she concludes, subsection (b)(1)'s guardianship proceeding is available regardless of the outcome of subsection (a)'s reasonable-efforts determination.

Like the district court, we find Gonzalez-Vera's position inconsistent with the statute's text. Under subsection (a), the Attorney General begins by "determin[ing] whether the [protected] person has made reasonable efforts to comply with the judgment." "If" the answer is no, the statute gives the Attorney General two choices. He "may" disclose the protected person's identity and location to the judgment-holder or, if doing so would endanger the protected person, he "may" decline to disclose, in which case the judgment-holder can invoke subsection (b)(1) and seek appointment of a guardian. But where, as here, the Attorney General "determines" that the protected person *is* making reasonable efforts, the statute gives him no authority to disclose to the judgment-holder. *Cf. United Mine Workers of Am. v. Mine Safety and Health Admin.,* 823 F.2d 608, 618 (D.C. Cir. 1987) (reading 30 U.S.C. § 815(b)(2), which states that the agency "may grant . . . [temporary] relief if" one of several conditions is met, as authorizing it to grant such relief *only* if one of the delineated conditions is met). In that circumstance, the judgment-holder has no authority to initiate subsection (b)'s guardianship proceedings because, by its terms, subsection (b)(1) is triggered only "upon a *decision* by the Attorney General to deny disclosure"—a decision the Attorney General can make only if the protected person is *not* making reasonable efforts to satisfy the judgment. § 3523(b)(1) (emphasis added).

Nor do we agree with Gonzalez-Vera that "[b]ecause Congress explicitly included language addressing reasonable

efforts in § 3523(a), the omission of similar language in § 3523(b) demonstrates that Congress purposefully excluded a requirement from § 3523(b) that the Attorney General make a reasonable efforts determination." Appellant's Br. 12. As previously noted, subsection (a) provides that if the Attorney General finds that a protected person is not making reasonable efforts to comply, "the Attorney General may . . . disclose the identity and location of the person" to the judgment-holder. Subsection (b) repeatedly refers back to this language. Specifically, subsection (b)(1) states that the judgment holder "may, upon a decision by the [Attorney General] to deny disclosure . . . bring an action." Similarly, subsection (b)(3) states that, before appointing a guardian, the court must determine that the Attorney General has "declined to disclose to the petitioner the current identity and location of the protected person." By using this language consistently throughout section 3523, we think it clear that Congress intended to make the availability of subsection (b)'s guardianship provision dependent upon the Attorney General's subsection (a) decision to deny disclosure. *See Am. Fed'n of Gov't Employees, Local 2782 v. Fed. Labor Relations Auth.*, 803 F.2d 737, 740 (D.C. Cir. 1986) ("It is a generally accepted precept of interpretation that statutes or regulations are to be read as a whole, with 'each part or section . . . construed in connection with every other part or section.'") (citation omitted) (ellipsis in original).

This result makes sense. Under Gonzalez-Vera's interpretation of subsection (b), guardianship would become available in *every* case in which the protected person's identity and location are not disclosed to the judgment-holder, including cases—like this one—in which the Attorney General determines that the protected person *is* making reasonable efforts to satisfy the judgment. But given the statute's language and structure, and the risks of

disclosing a protected person's identity and location even to a court-appointed guardian, we think it clear that Congress intended to make guardianship available only where the Attorney General finds that the protected person is failing to make reasonable efforts—that is, only where disclosure to a guardian is necessary to enforce the judgment. We realize this leaves Gonzalez-Vera, though dissatisfied with Townley's efforts to pay, without a remedy in these proceedings. As the Attorney General acknowledged at oral argument, however, she remains free to seek a fresh subsection (a) determination should she have reason to believe that Townley's financial circumstances may have changed.

Finally, Gonzalez-Vera contends that our interpretation of section 3523 presents two avoidable constitutional concerns. Citing *Hayburn's Case*, 2 U.S. 408, 410 (1792), she first argues that by blocking a guardianship proceeding, the Attorney General is, in effect, "revis[ing] or overturn[ing] a final decision by an Article III court." Appellant's Br. 22. Second, she argues that, as interpreted by the district court, section 3523 violates the Fifth Amendment by depriving her of her judgment, as well as the statutory right to a guardian, without due process of law. But because Gonzalez-Vera advanced neither of these arguments in the district court, she may not do so here. *See, e.g.*, *Trout v. Sec'y of the Navy*, 540 F.3d 442, 448 (D.C. Cir. 2008). To be sure, as Gonzalez-Vera reminds us, waiver is a discretionary doctrine, but we think it clear that no "plain miscarriage of justice" will result from our declining to consider these arguments. *Hormel v. Helvering*, 312 U.S. 552, 558 (1941).

We affirm the district court's order dismissing the case.

*So ordered.*